UNITED STATES DISTRICT COURT  FILED CLERK
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------- 2010 DEC -9  AM 9:14
JENNIFER COLEN,

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

Plaintiff,                                            Civil Action No.:

-against-

**SUMMONS ISSUED**

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., MISAO NISHIKAWA, M.D.,
L. THIERRY REMY, M.D., CHANLAND
ROONPRAPUNT, M.D., ROGER KULA, M.D.,
JOHN XI CHEN, M.D, NORTH SHORE – LONG
ISLAND JEWISH HEALTH SYSTEM, INC. , THE
CHIARI INSTITUTE, an unincorporated entity of
North Shore University Hospital and HARVEY
CUSHING INSTITUTES OF NEUROSCIENCE, an
unincorporated entity of North Shore University
Hospital,

**COMPLAINT AND
DEMAND FOR
JURY TRIAL**

HURLEY, J.
TOMLINSON, M.J.

Defendants.
---------------------------------------------------------X

     Plaintiffs, **JENNIFER COLEN**, by their attorneys, **GOLDSMITH CTORIDES &**

**RODRIGUEZ, L.L.P.** and **THE LOCKS LAW FIRM, P.L.L.C.**, as and for their Complaint

against the Defendants allege, upon information and belief, as follows:

### PRELIMINARY STATEMENT

    1.    This case arises out of medical care and treatment received by the Plaintiff,

**JENNIFER COLEN**, at **THE CHIARI INSTITUTE, an unincorporated entity of North**

**Shore University Hospital, NORTH SHORE – LONG ISLAND JEWISH HEALTH**

**SYSTEM, INC. and the HARVEY CUSHING INSTITUTES OF NEUROSCIENCE, an**

**unincorporated entity of North Shore University Hospital, from Defendants THOMAS H.**

**MILHORAT, M.D., PAOLO A. BOLOGNESE M.D., MISAO NISHIKAWA, M.D., L.**

**THIERRY REMY, M.D., CHANLAND ROONPRAPUNT, M.D., ROGER KULA, M.D.,**

**JOHN XI CHEN, M.D.,** between July, 2006 and June, 2008.

2.     The Defendants falsely advised the Plaintiff, JENNIFER COLEN, that she was suffering from tethered cord syndrome, which was contributing to and causing her presenting symptoms of choking, fatigue and suboccipital pressure headaches, and that she required surgery on the tethered cord to treat these conditions.

3.     The Defendants thereafter recommended and performed surgery upon Plaintiff, JENNIFER COLEN, without advising her that said surgery was unnecessary and experimental and that she was being used as a human research subject. Specifically, on December 5, 2006 Defendants, THOMAS H. MILHORAT, M.D., PAOLO A. BOLOGNESE M.D., L. THIERRY REMY, M.D., and CHANLAND ROONPRAPUNT, M.D., performed spinal cord untethering surgery upon the Plaintiff on the premises of Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC., without advising her that the untethering surgery was unnecessary and experimental to the extent that it was not a scientifically accepted method for treating Chiari I Malformation and Chiari related symptoms. The safety and efficacy of said "untethering" surgery as a treatment for Chiari I Malformation or Chiari related symptoms, has never been proven by any published peer-reviewed medical or scientific study.

4.     The Defendants, THOMAS H. MILHORAT, M.D., PAOLO A. BOLOGNESE, M.D., MISAO NISHIKAWA, M.D., L. THERRY REMY, M.D., CHANLAND ROONPRAPUNT, M.D., ROGER KULA, M.D. and JOHN XI CHEN, M.D., also unnecessarily recommended and performed invasive cervical traction upon the Plaintiff on June 15, 2007 on the premises of Defendant, NORTH SHORE UNIVERSITY HOSPITAL. The safety and efficacy of invasive cervical traction as a diagnostic tool for craniocervical instability has never been proven in the medical or scientific literature.

2

5.    Tethered cord surgery (sectioning of the filum terminale) was not and is not an acceptable scientifically supportable treatment for Chiari I Malformation.

6.    Tethered cord surgery (sectioning of the filum terminale) was and is considered an experimental treatment for Chiari I Malformation.

7.    Defendants recommended and performed the tethered cord surgery and invasive cervical traction solely for their financial gain.  Defendants utilized the Plaintiff, JENNIFER COLEN, as a human research subject without her consent, solely for financial gain.  The tethered cord surgery did not improve the Plaintiff, JENNIFER COLEN's condition.  To the contrary, the Plaintiff has been caused to suffer irreversible damages that will impact the rest of her life, including but not limited to worsened severe lower back pain and pressure and spinal instability.

8.    Moreover, the Defendants failed to successfully treat the symptoms which led to Plaintiff seeking out their services.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 based upon the diversity of citizenship of the Plaintiffs and the Defendants and since this action seeks damages in excess of SEVENTY FIVE THOUSAND ($75,000.00) DOLLARS, exclusive of interest and costs.

10.    Venue is proper in this district pursuant to 28 U.S.C. 1391(a).

## THE PARTIES

11.    At all times hereinafter mentioned, Plaintiff, **JENNIFER COLEN**, resided at 1730 Turtle Rock Drive, City of Lakeland, County of Polk, State of Florida.

12.    At all times hereinafter mentioned, THOMAS H. MILHORAT, M.D. (hereinafter referred to as "**MILHORAT**"), was and is a physician duly licensed to practice medicine in the

3

State of New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

13.    At all times hereinafter mentioned, Defendant, MILHORAT, held himself out to the public as a specialist in the area of neurosurgery.

14.    At all times hereinafter mentioned, PAOLO A. BOLOGNESE, M.D. (hereinafter referred to as "**BOLOGNESE**"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

15.    At all times hereinafter mentioned, Defendant, BOLOGNESE, held himself out to the public as a specialist in the area of neurosurgery.

16.    At all times hereinafter mentioned, MISAO NISHIKAWA, M.D., (hereinafter referred to as "**NISHIKAWA**"), was and is an unlicensed physician, practicing medicine without a license in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

17.    At all times hereinafter mentioned, Defendant, NISHIKAWA, held himself out to the public as a specialist in the area of pathophysiology.

18.    At all times hereinafter mentioned, Defendants, MILHORAT, BOLOGNESE, L. THIERRY REMY, M.D., CHANLAND ROONPRAPUNT, M.D., ROGER KULA, M.D., JOHN XI CHEN, M.D., NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC., THE CHIARI INSTITUTE and HARVEY CUSHING INSTITUTES OF NEUROSCIENCE knew or should have known that Defendant, NISHIKAWA was and is an unlicensed physician, practicing medicine without a license in Nassau Country, at 865 Northern Boulevard, Great Neck, New York 11021.

4

19.     At all times hereinafter mentioned, Defendants, MILHORAT, BOLOGNESE, L. THIERRY REMY, M.D., CHANLAND ROONPRAPUNT, M.D., JOHN XI CHEN, M.D., NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC., THE CHIARI INSTITUTE and HARVEY CUSHING INSTITUTES OF NEUROSCIENCE held Defendant, NISHIKAWA out as a physician licensed to practice medicine in the State of New York and the world's leading expert on morphometrics.

20.     At all times hereinafter mentioned, L. THIERRY REMY, M.D. (hereinafter referred to as "**REMY**"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

21.     At all times hereinafter mentioned, Defendant, REMY, held himself out to the public as a specialist in the area of neurosurgery.

22.     At all times hereinafter mentioned, CHANLAND ROONPRAPUNT, M.D. (hereinafter referred to as "**ROONPRAPUNT**"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, previously practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021, and currently practicing medicine in New York County, at 1000 Tenth Avenue, Suite 5G-80, New York, NY 10019.

23.     At all times hereinafter mentioned, Defendant, ROONPRAPUNT, held himself out to the public as a specialist in the area of neurosurgery.

24.     At all times hereinafter mentioned, ROGER W. KULA, M.D. (hereinafter referred to as "**KULA**"), was and is a physician duly licensed to practice medicine in the State of

New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

25.    At all times hereinafter mentioned, Defendant, KULA, held himself out to the public as a specialist in the area of neurology.

26.    At all times hereinafter mentioned, JOHN XI CHEN, M.D. (hereinafter referred to as "**CHEN**"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, previously practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021, and currently practicing medicine at 1275 York Avenue, New York, New York 10065.

27.    At all times hereinafter mentioned, Defendant, CHEN, held himself out to the public as a specialist in the area of neurology.

28.    At all times hereinafter mentioned, Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC. (hereinafter referred to as "**NORTH SHORE - LIJ**"), was and is a corporation duly organized and existing under the laws of the State of New York.

29.    At all times hereinafter mentioned, Defendant, NORTH SHORE - LIJ, by its agents, servants and employees, controlled, managed and operated the hospital located at 300 Community Drive, Manhasset, New York 11030, in the State of New York, County of Nassau, for the care and treatment of persons afflicted with illness and disease.

30.    At all times hereinafter mentioned, THE CHIARI INSTITUTE (hereinafter referred to as "**TCI**"), was and is an unincorporated entity of North Shore University Hospital, located at 865 Northern Boulevard, Great Neck, New York 11021.

31.    At all times hereinafter mentioned, the Defendant, TCI, was and is owned, controlled, managed and operated by Defendant, NORTH SHORE – LIJ.

32.    At all times hereinafter mentioned, the Defendant, TCI, was and is controlled, managed and operated by the Board of Directors of Defendant, NORTH SHORE – LIJ.

33.    At all times hereinafter mentioned, HARVEY CUSHING INSTITUTES FOR NEUROSCIENCE (hereinafter referred to as **"HARVEY CUSHING"**), was and is an unincorporated entity of North Shore University Hospital, located at 865 Northern Boulevard, Great Neck, New York 11021.

34.    At all times hereinafter mentioned, the Defendant, HARVEY CUSHING, was and is owned, controlled, managed and operated by Defendant, NORTH SHORE – LIJ.

35.    At all times hereinafter mentioned, the Defendant, HARVEY CUSHING, was and is controlled, managed and operated by the Board of Directors of Defendant, NORTH SHORE – LIJ.

36.    At all times hereinafter mentioned, Defendant, NORTH SHORE – LIJ and its Board of Directors, were responsible for the medical care rendered and the medical research being performed at Defendant, TCI.

37.    At all times hereinafter mentioned, Defendant, NORTH SHORE – LIJ and its Board of Directors, were responsible for the medical care rendered and the medical research being performed at Defendant, HARVEY CUSHING.

38.    At all times hereinafter mentioned, Defendant, MILHORAT, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

39.    At all times hereinafter mentioned, Defendant, MILHORAT, was a private attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

40.     At all times hereinafter mentioned, Defendant, MILHORAT, was the Chief of Neurosurgery at Defendant, NORTH SHORE – LIJ.

41.     At all times hereinafter mentioned, Defendant, MILHORAT, was an agent, servant and/or employee of Defendant, TCI.

42.     At all times hereinafter mentioned, Defendant, MILHORAT, was the Director of Defendant, TCI, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

43.     At all times hereinafter mentioned, Defendant, MILHORAT, was the Director of Defendant, HARVEY CUSHING, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

44.     At all times hereinafter mentioned, Defendant, MILHORAT, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

45.     At all times hereinafter mentioned, Defendant, BOLOGNESE, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

46.     At all times herein mentioned, Defendant, BOLOGNESE, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

47.     At all times hereinafter mentioned, Defendant BOLOGNESE was not, and is not board certified in neurosurgery, or in any area of medicine.

48.     At all times hereinafter mentioned, Defendant, BOLOGNESE, was an agent, servant and/or employee of Defendant, TCI.

49.     At all times hereinafter mentioned, Defendant, BOLOGNESE, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

8

50.     At all times hereinafter mentioned, Defendant, BOLOGNESE, was the Assistant Director of TCI, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

51.     At all times hereinafter mentioned, Defendant, BOLOGNESE, was the Assistant Director of HARVEY CUSHING, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

52.     At all times hereinafter mentioned, Defendant, NISHIKAWA, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

53.     At all times hereinafter mentioned, Defendant NISHIKAWA, was an agent, servant and/or employee of Defendant, TCI.

54.     At all times hereinafter mentioned, Defendant, NISHIKAWA, was not a resident at Defendant, NORTH SHORE – LIJ.

55.     At all times hereinafter mentioned, Defendant, NISHIKAWA, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

56.     At all times hereinafter mentioned, Defendant, REMY, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

57.     At all times hereinafter mentioned, Defendant, REMY, was a neurosurgical fellow with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

58.     At all times hereinafter mentioned, Defendant, REMY, was an agent, servant and/or employee of Defendant, TCI.

59.     At all times hereinafter mentioned, Defendant, REMY, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

60.    At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

61.    At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

62.    At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an agent, servant and/or employee of Defendant, TCI.

63.    At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

64.    At all times hereinafter mentioned, Defendant, KULA, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

65.    At all times hereinafter mentioned, Defendant, KULA, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

66.    At all times hereinafter mentioned, Defendant, KULA, was an agent, servant and/or employee of Defendant, TCI.

67.    At all times hereinafter mentioned, Defendant, KULA, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

68.    At all times hereinafter mentioned, Defendant, CHEN, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

69.    At all times hereinafter mentioned, Defendant, CHEN, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

70.    At all times hereinafter mentioned, Defendant, CHEN, was an agent, servant and/or employee of Defendant, TCI.

71.     At all times hereinafter mentioned, Defendant, CHEN, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

## FACTUAL SUMMARY

72.     Plaintiff, **JENNIFER COLEN**, was born in 1972.

73.     The Plaintiff, JENNIFER COLEN was initially diagnosed with Chiari I Malformation in her home state of Florida and underwent a posterior fossa decompression surgery for said condition in or about 1991.

74.     Chiari Malformation is a condition in which brain tissue protrudes into the spinal canal. There are several different forms of Chiari Malformation. The most common type is the Chiari I Malformation. In normal anatomy, the cerebellar tonsils are located just above the level of the foramen magnum. In an individual with Chiari I, the tonsils hang below the level of the foramen magnum into the spinal canal.

75.     The Plaintiff, JENNIFER COLEN learned of Defendant, TCI through a support group named World Arnold Chiari Malformation Association (WACMA).

76.     Through arrangements made by WACMA, JENNIFER COLEN consulted with Defendant, BOLOGNESE in the lobby of the Grand Floridian Hotel in the Walt Disney World Resort in Lake Buena Vista, Florida.

77.     That the Plaintiff, JENNIFER COLEN, also reviewed the website of the Defendant, The Chiari Institute, a Division of North Shore – Long Island Jewish Medical Health System, Inc., and as a result of the contents of and representations contained on said website, and based on the information provided to her by Defendant, BOLOGNESE at their Florida meeting, went to said facility for an evaluation.

11

78.     That the Defendant, The Chiari Institute, a Division of North Shore – Long Island Jewish Medical Health System, Inc., caused a website to be created, managed, and operated to, *inter alia*, set forth content for and make representations to consumers of medical services in New York State and throughout the United States.

79.     The website of TCI advertises to the public that the physicians at said facility have expertise in the treatment of Chiari Malformations and in the performance of surgeries to treat Chiari Malformation, and other related conditions.  In addition, the website advertises to the public that the physicians at said facility have expertise in performing revision surgeries for patients whose prior surgeries have not resolved their symptoms.

80.     The website of TCI advertises to the public that "the neurosurgeons of The Chiari Institute have made major contributions to the basic sciences of Chiari Malformation (CM) and syringomyelia". Upon information and belief, Defendants knew such statement was false.

81.     The website of TCI advertises to the public that it carries out "research projects" supported by a $17.5 million dollar grant from the National Institutes of Health (NIH).

82.     The NIH grant advertised on TCI's website does not exist.  Upon information and belief, Defendants knew that the NIH grant advertised on TCI's website does not exist.

83.     The website of the Defendant, TCI, posts a video presentation by Defendant, BOLOGNESE, entitled:  "Tethered Cord Syndrome."

84.     The video presentation by Defendant, BOLOGNESE, contains knowingly false and misleading information regarding tethered cord syndrome.

85.     Defendant, BOLOGNESE, states on said video presentation that when the filum terminale becomes too thick and too tense it creates a downward pull on the spinal cord, thereby causing and contributing to Chiari Malformation and tonsillar herniation without informing the

12

public that there are no scientific studies or peer reviewed medical literature, supporting this conclusion.

86.    Upon information and belief, Defendant, BOLOGNESE, knew that there are no scientific studies or peer reviewed medical literature supporting this conclusion.

87.    Defendant, BOLOGNESE, claims in the video presentation that Defendant, TCI, has developed the "TCI Special," a system for diagnosing tethered cord syndrome by utilizing clinical data, radiologic studies, stimulation tests and morphometrics.

88.    Defendant, BOLOGNESE, fails to inform the public that the concept of morphometrics as it relates to  tethered cord syndrome is a diagnostic tool developed by Defendant, NISHIKAWA, an employee of Defendant, TCI, who is not licensed to practice medicine in the State of New York.  Upon information and belief, Defendant, BOLOGNESE, knew that Defendant, NISHIKAWA, was not licensed to practice medicine in the State of New York.

89.    Defendant, BOLOGNESE, fails to inform the public in the video presentation that the concept of morphometrics has not been widely studied or written about in the scientific or peer reviewed medical literature as it relates to tethered cord syndrome. Upon information and belief, Defendant, BOLOGNESE, knew that the concept of morphometrics has not been widely studied or written about in the scientific or peer reviewed medical literature as it relates to tethered cord syndrome.

90.    Defendant, BOLOGNESE, on said video presentation fails to advise the public that no scientific or medical proof exists proving that morphometrics is useful and efficacious in the diagnosis of tethered cord syndrome.

91.     Upon information and belief, Defendant, BOLOGNESE, knew that no scientific or medical proof exists proving that morphometrics is useful and efficacious in the diagnosis of tethered cord syndrome.

92.     Upon information and belief, Defendants, BOLOGNESE and MILHORAT, and the other physicians at Defendant, TCI, rely on Defendant, NISHIKAWA's, interpretations of radiological studies in making the diagnosis of tethered cord syndrome, even though Defendant, NISHIKAWA, is not a physician licensed to practice medicine in the State of New York.

93.     Defendant, BOLOGNESE, fails to inform the public on said video presentation that he and the other physicians at Defendant, TCI, rely on Defendant, NISHIKAWA's, interpretations of radiological studies in making the diagnosis of tethered cord syndrome, even though Defendant, NISHIKAWA, is not a physician licensed to practice medicine in the State of New York.

94.     The plaintiff, JENNIFER COLEN·was initially seen at Defendant TCI, in or about July, 2006 with complaints of choking, fatigue and suboccipital pressure headaches.

95.     In or about July, 2006, the Plaintiff, JENNIFER COLEN, was evaluated at Defendant TCI, by the Defendant physicians who diagnosed her as having tethered cord syndrome.

96.     Defendant, NISHIKAWA, performed morphometric interpretations on the Plaintiff, JENNIFER COLEN's radiological studies to make a diagnosis of tethered cord syndrome, while he was physically present in the State of New York, even though he was not a physician licensed to practice medicine in the State of New York.

97.     Other Defendant physicians relied, in part, upon Defendant, NISHIKAWA's interpretations of the Plaintiff, JENNIFER COLEN's radiological studies and his diagnosis of

tethered cord syndrome to develop a plan of care and treatment for the Plaintiff, JENNIFER COLEN.

98.     The Defendants misled the Plaintiff through their deceptive advertising on their website and lecture presentation materials available on the internet, and through the deceptive direct statements made to the Plaintiff, JENNIFER COLEN, into believing that the tethered cord surgery was necessary and indicated because it would treat not only her urinary complaints and lower back pain, but additionally, that the surgery would also treat her chief presenting complaints of choking, fatigue and suboccipital pressure headaches.  Upon information and belief, Defendants knew such statements were false.

99.     The Defendants represented to Plaintiff, JENNIFER COLEN, that tethered cord surgery was a very safe procedure and rarely leads to complications.  Upon information and belief, Defendants knew such statement was false.

100.    The Defendants failed to advise Plaintiff, JENNIFER COLEN, that the subject of tethered cord surgery as a treatment for Chiari Malformation is highly controversial in the field of neurosurgery.  Upon information and belief, Defendants knew that the subject of tethered cord surgery as a treatment for Chiari Malformation is highly controversial in the field of neurosurgery.

101.    The Defendants' representations misled the Plaintiff, JENNIFER COLEN, into believing that the tethered cord surgery would lead to an improvement of her presenting symptoms which included choking, fatigue and suboccipital pressure headaches.  Upon information and belief, Defendants knew that these representations were false.

102.    The Defendants did not advise the Plaintiff that tethered cord surgery has not been widely studied in the scientific and medical community as a treatment for Chiari Malformation,

and that no proof exists that tethered cord surgery is an effective treatment for Chiari Malformation and/or Chiari related symptoms.

103.     The Defendants did not advise the Plaintiff that there were no published peer reviewed medical studies in existence establishing that tethered cord surgery is a scientifically accepted and efficacious treatment for Chiari I Malformation and/or chiari related symptoms.

104.     That Defendants did not advise the Plaintiff that articles written by physicians associated with Defendant, TCI, on the topic of tethered cord surgery as a treatment for Chiari I Malformation had been submitted for publication, but had been rejected by peer reviewed medical journals.

105.     The Plaintiff, JENNIFER COLEN, underwent surgery to fix her allegedly tethered cord on December 5, 2006 at Defendant, NORTH SHORE – LIJ, which was performed by Defendants MILHORAT, BOLOGNESE, REMY and ROONPRAPUNT.

106.     Defendant, MILHORAT, acted as the primary surgeon and was assisted during the procedure by Defendants, BOLOGNESE, REMY and ROONPRAPUNT.

107.     The Plaintiff, JENNIFER COLEN's, condition significantly worsened following the performance of the tethered cord surgery.

108.     The Plaintiff, JENNIFER COLEN, developed significant injuries following the performance of the tethered cord surgery, including but not limited to increased lower back pain which at times radiates into the right buttock, worsened urinary symptoms and worsened spinal instability.

109.     The Plaintiff, JENNIFER COLEN, also underwent invasive cervical traction at Defendant, NORTH SHORE UNIVERSITY HOSPITAL on June 15, 2007, performed by

Defendants, MILHORAT, M.D., REMY, M.D., ROONPRAPUNT, M.D., and CHEN, M.D., to assess for craniocervical instability.

110.    The Plaintiff, JENNIFER COLEN, was not advised that invasive cervical traction is not an accepted method of diagnosing craniocervical instability.

111.    The Plaintiff, JENNIFER COLEN, had no radiologic evidence of craniocervical instability.

112.    The Defendants induced the Plaintiff, JENNIFER COLEN, into having experimental tethered cord surgery and invasive cervical traction, solely for their financial gain, full well knowing that there is no scientific or medical proof that tethered cord surgery provides any real improvement of a patient's Chiari Malformation and that there is no scientific or medical proof establishing that invasive cervical traction is an accepted method of diagnosing craniocervical instability.

113.    The Defendant, BOLOGNESE, presented a lecture at the meeting of the Association of Syringomylia held in July, 2008, in Arlington, Virginia, which is available on the internet wherein he stated that a prospective study in tethered cord surgery was being performed at Defendant, TCI.

114.    The Defendants, performed experimental surgery upon the Plaintiff, without advising the Plaintiff that the surgery was experimental in nature, as it related to the treatment of her Chiari Malformation and Chiari related symptoms, or that her case would be studied and included in a nationwide study that was being performed on a condition known as Ehlers Danlos Syndrome, which the Defendants claimed was connected to Tethered Cord Syndrome.

115.    Upon information and belief, without the Plaintiff's consent, pathologic studies were performed upon specimens removed from the Plaintiff's body during the unnecessary

Tethered Cord Surgery, solely for purposes of gathering information for the various studies being conducted at Defendant, TCI.

116.    The Defendants neither advised the Plaintiff about the experimental nature of the surgery, nor did the Defendants ask the Plaintiff to sign a consent form of the type that would be required for participation in human experimentation.

117.    The Plaintiff, JENNIFER COLEN, now suffers from significant injuries arising from the performance of the unnecessary and medically useless surgery performed by Defendants, MILHORAT and BOLOGNESE, at Defendant, NORTH SHORE – LIJ, on December 5, 2006, including but not limited to increased chronic lower back pain and pressure radiating into her legs and spinal instability and worsened urinary symptoms, and has had no relief of her presenting symptoms.

118.    In addition to suffering physical and emotional injuries, the Plaintiff has been caused to suffer financially as a result of having the unnecessary surgery recommended by the Defendants, including but not limited to, having to expend monies not covered by insurance, such as the initial consultation fee charged by Defendants, and travel expenses.

119.    The Plaintiff was covered by medical insurance at the time of her treatment by the Defendants.

120.    The Defendants charged the Plaintiff in excess of $50,000.00 for the unnecessary surgery they performed, and Plaintiff's health insurance carrier paid a portion of those charges.

121.    The Plaintiff's health insurance carrier under an equitable or contractual right of subrogation or under ERISA will seek reimbursement from the Plaintiff if she recovers monetary damages from this case.

122.     In the event that the Plaintiff recovers a monetary award from this case, she will be required to reimburse her health insurance carrier for the payments it has made to the Defendants and to her subsequent treating physicians who have treated her damages sustained in connection with the Defendants' malpractice.

123.     The fact that the Plaintiff will need to repay monies to her health insurance carrier is a direct and proximate result of the Defendants' fraudulently recommending and performing unnecessary surgery upon her, while knowing that said surgery was unnecessary and useless.

## AS AND FOR A FIRST CAUSE OF ACTION

### (MEDICAL MALPRACTICE)

124.     That Plaintiff, **JENNIFER COLEN**, came under the care of the Defendants, **MILHORAT, BOLOGNESE, NISHIKAWA, REMY, ROONPRAPUNT, KULA, CHEN, TCI, HARVEY CUSHING and NORTH SHORE - LIJ**, in or about July, 2006.

125.     That the Plaintiff, **JENNIFER COLEN**, received pre-operative and post-operative treatment from Defendants, **MILHORAT, BOLOGNESE, NISHIKAWA, REMY, ROONPRAPUNT, KULA, CHEN, TCI, HARVEY CUSHING** and **NORTH SHORE – LIJ**.

126.     That the Defendants, MILHORAT, BOLOGNESE, REMY, ROONPRAPUNT, NORTH SHORE – LIJ, TCI and HARVEY CUSHING, performed tethered cord surgery upon Plaintiff, JENNIFER COLEN, on December 5, 2006.

127.     That the Defendants, MILHORAT, REMY, ROONPRAPUNT and CHEN, performed invasive cervical traction upon the Plaintiff, JENNIFER COLEN, on June 15, 2007.

128.     That Defendant, NISHIKAWA, reviewed the Plaintiff, JENNIFER COLEN's MRI's and other radiological studies and helped formulate the Plaintiff's diagnosis of tethered cord syndrome and plan of care and treatment.

19

129.   That the Plaintiff, JENNIFER COLEN, continued to receive care from each of these Defendants until approximately June, 2008.

130.   At all times herein mentioned, the Defendants had a duty to use reasonable and proper care in their efforts to care for, treat and medicate said Plaintiff.

131.   That the Defendant, NORTH SHORE – LIJ, in rendering services to the Plaintiff, owed her the duty to use the degree of care, skill and diligence used by hospitals generally in the community.

132.   That the Defendants, jointly and severally, acting by themselves and through their agents, failed to use due, reasonable and proper care in treating the Plaintiff and deviated from accepted standards of medical care prevailing in the area of neurology, neurosurgery and pathophysiology, and the Defendants failed to exercise the knowledge, skill and diligence, which as physicians they should have possessed and exercised on behalf of the Plaintiff, and were otherwise careless and negligent.

133.   That as a result of the foregoing, the Plaintiff, JENNIFER COLEN, has sustained serious, severe and irreversible personal injuries, and pain and suffering.

134.   That solely as a result of the aforesaid injuries due to the improper care and treatment on the part of the Defendants, the Plaintiff, JENNIFER COLEN, has been subjected to repeated medical therapy, examinations, tests, medications, hospitalizations, and other care, and the Plaintiff, JENNIFER COLEN, will continue to require such further treatment in the future.

135.   That the Plaintiff, JENNIFER COLEN, has sustained the injuries and damages set forth solely by reason of the carelessness, negligence and lack of skill of the Defendants, without any negligence or carelessness on the part of Plaintiff, JENNIFER COLEN.

136.   That the Plaintiff, JENNIFER COLEN, is entitled to monetary damages stemming from this cause of action in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

## AS AND FOR A SECOND CAUSE OF ACTION

### (LACK OF INFORMED CONSENT)

137.   Plaintiff, **JENNIFER COLEN,** repeats and realleges each and every allegation contained in Paragraphs numbered **"1"** through **"136"**, inclusive, of this Verified Complaint, with the same force and effect as if set forth herein at length.

138.   The Defendants were under a duty and obligation to advise and inform the Plaintiff, JENNIFER COLEN, of inherent dangers, risks, and consequences of the medical treatment and procedures recommended by the Defendants, and that the Defendants failed, neglected, and/or refused to advise, inform, notify the Plaintiff, JENNIFER COLEN, of the apparent risk and possible complications and dangers which might result in the aforesaid procedures and/or treatment recommended.

139.   Defendants failed, neglected, and/or refused to inform, advise, notify, and counsel the Plaintiff, JENNIFER COLEN, of the possible inherent dangers and risks of said procedures and treatment recommended and performed, and failed to advise and inform the Plaintiff, JENNIFER COLEN, of any other method of treatment which might have been used to alleviate the condition from which the Plaintiff, JENNIFER COLEN, was suffering.

140.   Said failure to advise, inform, notify, and counsel the Plaintiff, JENNIFER COLEN, did not afford her adequate knowledge and information so as to determine whether or not she should submit to the aforesaid treatment and, therefore, the Plaintiff, JENNIFER COLEN, did not give her informed consent, based upon adequate knowledge of the risks and

dangers of the procedures; but rather, consented based upon information which was inadequate and insufficient upon which to base a decision to submit to the said procedure.

141.    By reason of the aforesaid, the treatment given herein was not based upon adequate and sufficient knowledge or informed consent.

142.    Plaintiff, JENNIFER COLEN, has sustained the injuries and damages, as set forth, solely by reason of the carelessness, negligence, and unskillfulness of the Defendants, and each of them, without negligence or carelessness on her part contributing thereto.

143.    That the Plaintiff, JENNIFER COLEN, is entitled to monetary damages stemming from this cause of action in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

### AS AND FOR A THIRD CAUSE OF ACTION

(FRAUD)

144.    The Plaintiff, **JENNIFER COLEN** repeats and realleges each and every allegation contained in Paragraphs numbered **"1"** through **"143"**, inclusive, of this Verified Compliant, with the same force and effects as if set forth herein at length.

145.    That on or about December 5, 2006, JENNIFER COLEN had tethered cord surgery at NORTH SHORE – LIJ, performed by Defendants, MILHORAT, BOLOGNESE, REMY and ROONPRAPUNT.

146.    That JENNIFER COLEN, was fraudulently induced into having tethered cord surgery by Defendants, MILHORAT, BOLOGNESE, REMY, ROONPRAPUNT, KULA, CHEN, NISHIKAWA, TCI, HARVEY CUSHING and NORTH SHORE – LIJ.

147.    That the Defendants falsely advised the Plaintiff that she had tethered cord syndrome and that said Defendants knew these statements were false when made.

148.    That the Defendants falsely advised the Plaintiff that she needed tethered cord surgery, and that said Defendants knew these statements were false when made.

149.    That the Defendants falsely advised the Plaintiff that by undergoing tethered cord surgery, she would see an improvement in her symptoms, including her presenting symptoms of choking, suboccipital pressure headaches and fatigue and that Defendants knew these statements were false when made.

150.    That in fact, the Defendants failed to inform the Plaintiff that tethered cord surgery can adversely affect the patient.

151.    That the Defendants fraudulently advised the Plaintiff on their website that Defendants, TCI and HARVEY CUSHING are supported by a $17.5 million dollar grant from the NIH which in fact, does not exist.

152.    That Defendants knowingly and with intent to deceive failed to advise the Plaintiff that they relied upon Defendant NISHIKAWA'S interpretation of various radiological studies, and his morphometric calculations, in making the diagnosis of tethered cord syndrome, even though Defendant NISHIKAWA was not, and is not, a licensed medical doctor in the State of New York and was, nonetheless, interpreting these radiologic studies while he was physically present in the State of New York.

153.    That the Defendant physicians knowingly and with intent to deceive, failed to advise the Plaintiff that Defendant, NISHIKAWA, performed morphometric interpretations on her radiological studies and helped formulate her diagnosis of "tethered" cord syndrome and her plan of care even though Defendant, NISHIKAWA was not a licensed physician in the State of New York.

154.    That the Defendant physicians knowingly and with intent to deceive, failed to advise the Plaintiff, JENNIFER COLEN that the Defendant physicians relied upon Defendant, NISHIKAWA's morphometric interpretations in making her diagnosis of "tethered" cord syndrome and in formulating her plan of care even though Defendant, NISHIKAWA was not a licensed physician in the State of New York.

155.    That the Defendants knowingly and with intent to deceive advised the Plaintiff that she needed to undergo invasive cervical traction to evaluate her alleged craniocervical instability.

156.    That the Plaintiff had no evidence of craniocervical instability on any radiological studies and that the Defendants intentionally failed to advise her that there was no evidence of craniocervical instability on her radiology studies.

157.    That Invasive Cervical Traction was not an approved method of evaluating and/or diagnosing cranio-cervical instability.

158.    That after the conclusion of the invasive cervical traction the Defendants falsely and with intent to deceive, advised the Plaintiff that she had craniocervical instability and recommended cranio-cervical fusion.

159.    That the Defendants jointly and severally recommended various procedures to the Plaintiff, solely for their own financial gain, knowing full well that there was no scientific proof that these surgeries would be of any benefit to the Plaintiff.

160.    That as a result of the knowingly false representations made by the Defendants, the Plaintiff, JENNIFER COLEN was fraudulently induced into having tethered cord surgery on December 5, 2006 and invasive cervical traction on June 15, 2007.

161.    That the Plaintiff, JENNIFER COLEN, detrimentally relied on the fraudulent information provided by the Defendants as set forth in the paragraphs above, and agreed to have tethered cord surgery, which was performed by the Defendants on December 5, 2006, and invasive cervical traction which was performed on June 15, 2007.

162.    As a result of having tethered cord surgery and invasive cervical traction by the Defendants, the Plaintiff was caused to suffer serious physical and emotional injuries, including but not limited to increased lower back pain, instability and worsened urinary symptoms.

163.    In addition to suffering physical and emotional injuries, the Plaintiff has been caused to suffer financially as a result of the fraud perpetrated upon her by the Defendants, including but not limited to having to expend monies for travel expenses and medical expenses, not covered by insurance, such as the initial consultation fee charged by Defendants.

164.    The Plaintiff was covered by medical insurance at the time of her treatment by the Defendants.

165.    The Defendants charged the Plaintiff in excess of $50,000.00 for the unnecessary surgeries they performed, and Plaintiff's health insurance carrier paid a portion of those charges.

166.    The Plaintiff's health insurance carrier under an equitable or contractual right of subrogation, or pursuant to a statutory lien, will seek reimbursement from the Plaintiff if she recovers monetary damages from this case.

167.    In the event that the Plaintiff recovers a monetary award from this case, she will be required to reimburse her health insurance carrier for the payments it has made to the Defendants and to her subsequent treating physicians who have treated her damages sustained in connection with the Defendants' malpractice.

168. The fact that the Plaintiff will need to repay monies to her health insurance carrier is a direct and proximate result of the Defendants' fraudulently recommending and performing unnecessary surgeries to her, while knowing that said surgeries were unnecessary and useless.

169. As a result of the fraud perpetrated by the Defendants upon the Plaintiff, JENNIFER COLEN, she is entitled to punitive damages.

170. Accordingly, the Plaintiff, JENNIFER COLEN has suffered compensatory and punitive damages in an amount exceeding TEN MILLION ($10,000,000.00) DOLLARS.

### AS AND FOR A FOURTH CAUSE OF ACTION

(VIOLATION OF NYS GBL SECTIONS 349 and 350)

171. The Plaintiff, **JENNIFER COLEN**, repeats and realleges each and every allegation contained in Paragraphs numbered **"1"** through **"170"**, inclusive of this Verified Complaint, with the same force and effect as if set forth herein at length.

172 That the Plaintiff, JENNIFER COLEN, was a consumer of medical services provided by Defendants in the State of New York.

173. That the making and dissemination of the representations by the Defendants to Plaintiff, JENNIFER COLEN, as well as other consumers throughout the United States, as outlined in Paragraphs 72-123 were material and constitute deceptive business practices and acts and false advertising in violation of New York State General Business Law Sections 349 and 350.

174. Through their aforementioned conduct, Defendants, MILHORAT, BOLOGNESE, NISHIKAWA, REMY, ROONPRAPUNT, KULA, CHEN, NORTH SHORE - LIJ, TCI and HARVEY CUSHING, aided and abetted one another and violated N.Y.S. General Business Law Sections 349 and 350.

26

175.    The Plaintiff, JENNIFER COLEN, was injured and sustained injuries as a result of the Defendants false business practices and false advertising, in that she was induced into having surgery, that not only failed to improve her symptoms, but made her medical condition worse, to the extent that she will suffer from increased chronic back pain and spinal instability that she sustained as a result of the surgery of December 5, 2006, for the rest of her life.

176.    The Plaintiff, JENNIFER COLEN, seeks to recover actual compensatory damages for the injuries she sustained as a result of the Defendants' deceptive business practices, acts and false advertising.

177.    The Plaintiff, JENNIFER COLEN, seeks to recover punitive damages and reasonable attorney's fees and costs as a result of the Defendants' deceptive business practices, acts and false advertising pursuant to the New York State G.B.L. Section 349 and 350.

178.    That due to the Defendants deceptive business practices, the Plaintiff, JENNIFER COLEN, has been damaged in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

### AS AND FOR A FIFTH CAUSE OF ACTION

(NEGLIGENT HIRING AND RETENTION)

179.    The Plaintiff, **JENNIFER COLEN**, repeats and realleges each and every allegation contained in Paragraphs **"1"** through **"178"**, inclusive of this Verified Complaint with the same force and effect as if set forth herein at length.

180.    That the Defendants, MILHORAT, BOLOGNESE, NISHIKAWA, REMY, ROONPRAPUNT, KULA and CHEN, were employees of Defendant, NORTH SHORE – LIJ.

181.    That the Defendant, NORTH SHORE – LIJ, owed the Plaintiff the duty to hire employees who were fit to treat the conditions she was suffering from.

182.    That the Defendants were unfit to render treatment to the Plaintiff, JENNIFER COLEN.

183.    That Defendant, NORTH SHORE – LIJ, should have known through the exercise of reasonable diligence, that the Defendants were unfit to practice medicine and dangerous and that said Defendants were performing unnecessary surgeries solely for financial gain, and should have further known that the Defendants were conducting human experimentation without having the proper consent.

184.    That there was a foreseeable risk of harm to the Plaintiff, JENNIFER COLEN.

185.    That Defendant, NORTH SHORE - LIJ's negligence in hiring and retaining the Defendants, MILHORAT, BOLOGNESE, ROONPRAPUNT, REMY, KULA, CHEN and NISHIKAWA, caused the Plaintiff to suffer severe and irreversible injuries from which she will suffer for the rest of her life.

186.    That due to the Defendants' negligent hiring and retention, the Plaintiff, JENNIFER COLEN, has been damaged in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

**WHEREFORE**, the Plaintiffs, **JENNIFER COLEN,** demand judgment against the Defendants

(a)    on the FIRST CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(b)    on the SECOND CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(c)    on the THIRD CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(d)     on the FOURTH CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS; and

(e)     on the FIFTH CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

together with costs, interest and disbursements of this action, and for such other and further relief that this Court deems just and proper.

Dated: New York, New York
      December 7th, 2010

                    **GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P.**
                    Attorneys for Plaintiff,
                    **JENNIFER COLEN**

By:

                    LEE S. GOLDSMITH (LSG 8875)
                    CHRISTINA CTORIDES (CC 5271)
                    A Member of the Firm
                    Office & P.O. Address
                    747 Third Avenue, 37th Floor
                    New York, NY  10017
                    (212) 421-5500

                    and

                    **LOCKS LAW FIRM, PLLC**
                    **Co-Counsel for Plaintiffs**
                    STEVEN P. KNOWLTON
                    GENE LOCKS
                    JANET C. WALSH
                    ANDREW P. BELL
                    747 Third Avenue, 37th Floor
                    New York, NY  10017
                    212-838-3333

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JENNIFER COLEN,

                                           Civil Action No.:

                        Plaintiff,

            -against-                                     **JURY DEMAND**

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., MISAO NISHIKAWA, M.D.,
L. THIERRY REMY, M.D., CHANLAND
ROONPRAPUNT, M.D., ROGER KULA, M.D.,
JOHN XI CHEN, M.D, NORTH SHORE – LONG
ISLAND JEWISH HEALTH SYSTEM, INC. , THE
CHIARI INSTITUTE, an unincorporated entity of
North Shore University Hospital and HARVEY
CUSHING INSTITUTES OF NEUROSCIENCE, an
unincorporated entity of North Shore University
Hospital,

                        Defendants.
-----------------------------------------------------------------X

                        **JURY DEMAND**

    **PLEASE TAKE NOTICE** that the Plaintiffs demand a trial by jury on all the issues

herein.

Dated: New York, New York
            December 7th, 2010


                        GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P.
                            Attorneys for Plaintiffs

                        By:
                            LEE S. GOLDSMITH (LSG 8875)
                            CHRISTINA CTORIDES (CC 5271)
                            A Member of the Firm
                            Office & P.O. Address
                            747 Third Avenue, 37th Floor
                            New York, NY 10017
                            (212) 421-5500

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JENNIFER COLEN,

                    Plaintiff,

      -against-

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., MISAO NISHIKAWA, M.D.,
L. THIERRY REMY, M.D., CHANLAND
ROONPRAPUNT, M.D., ROGER KULA, M.D.,
JOHN XI CHEN, M.D, NORTH SHORE – LONG
ISLAND JEWISH HEALTH SYSTEM, INC. , THE
CHIARI INSTITUTE, an unincorporated entity of
North Shore University Hospital and HARVEY
CUSHING INSTITUTES OF NEUROSCIENCE, an
unincorporated entity of North Shore University
Hospital,

                    Defendants.
-------------------------------------------------------------X

Civil Action No.:

**CERTIFICATE**
**OF MERIT**

STATE OF NEW YORK    )
                    : ss.:
COUNTY OF NEW YORK  )

      **CHRISTINA CTORIDES,** a member of the law firm of **GOLDSMITH, CTORIDES & RODRIGUEZ, L.L.P.,** hereby affirms the truth of the following:

      That pursuant to the Rules of Civil Procedure §3012(a), the deponent states that she has conferred with a physician who is a specialist in the field in which the Defendants practice medicine and has been advised that sufficient basis exist for the commencement of this medical malpractice suit.

                                     **CHRISTINA CTORIDES**

Sworn to before me this
7th day of December, 2010.

Notary Public

KATHLEEN KATAN
Notary Public, State of New York
No. 01KA4735756
Qualified in Orange County
Commission Expires April 30, 20**11**

31

STATE OF NEW YORK      )
                       : ss.:
COUNTY OF NEW YORK  )

    **CHRISTINA CTORIDES**, being duly sworn, deposes and says:

    I am a member of the law firm of **GOLDSMITH, CTORIDES & RODRIGUEZ, L.L.P.**, attorneys for the Plaintiffs in the within action.   That I have read the foregoing Complaint and know the contents thereof; that the same is true, to my knowledge, except as to the within matters stated to be alleged upon information and belief, and that, as to those, I believe them to be true.   That the sources of my information are papers and records in Deponent's possession and file.   That the reason this Verification is made by your Deponent, and not by said Plaintiffs, are that the Plaintiffs do not reside within the County wherein your Deponent maintains her office.

**CHRISTINA CTORIDES**

Sworn to before me this
7th day of December, 2010.

Notary Public

KATHLEEN KATAN
Notary Public, State of New York
No. 01KA4735756
Qualified in Orange County
Commission Expires April 30, 20//

32